ORTHOPAEDIC SPECIALTY GROUP, P.C, et al., :
          Plaintiffs,           :
                                      :
v.                                    :         3:10-cv-1470 (CFD)
                                      :
PENTEC, INC. and MICHAEL E. CALLAHAN,    :
          Defendants.         :

## **RULING ON MOTION TO REMAND AND MOTION TO DISMISS**

On August 16, 2010, the plaintiffs, Orthopaedic Specialty Group, P.C. ("OSG"), a comprehensive musculoskeletal medical practice; Orthopaedic Specialty Group, P.C. 401(k) Pension Plan (the "Plan"), a qualified retirement plan for the employees of OSG; and five individuals, Herbert I. Hermele, M.D., David F. Bindeglass, M..D., Robert V. Dawe, M.D., Dante A. Brittis, M..D., and Robert A. Stanton, M.D., who are both members and trustees of the Plan (collectively, the "Trustees"), filed a complaint in the Connecticut Superior Court alleging professional negligence and breach of contract under Connecticut law. On September 15, 2010, the defendants, Pentec, Inc. and Michael E. Callahan, President of Pentec, removed the case to federal court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. Pending are the plaintiffs' motion to remand and the defendants' motion to dismiss. For the reasons that follow, the motion to remand is granted and the motion to dismiss is denied, the latter without prejudice to reasserting in the Superior Court.

## I.     Factual Background[1]

In March 2003, the plaintiffs hired Pentec to provide comprehensive advisory and consulting services regarding the design, structure, and administration of the Plan. The defendants continued to provide such advisory services to the plaintiffs until July 2009. For nearly twenty years, all of the assets of the Plan were invested with Bernard L. Madoff Investment Securities, LLC ("Madoff"). The Plan participants had invested approximately $10 million of their earnings into the Plan and as of November 30, 2008, Madoff estimated the Plan's total value at just under $34 million. On December 12, 2008, the Trustees learned of Madoff's now well-publicized ponzi scheme. As a result of Madoff's fraudulent scheme, the Plan lost nearly all of its value.

Following the discovery of Madoff's scheme and the losses resulting from it, the defendants advised the plaintiffs that they should, among other things, change the Plan to a participant-directed investment plan and engage an independent institutional trustee. The plaintiffs claim that, although the defendants advised the Trustees as to their fiduciary obligations to the Plan and its participants after discovery of the Madoff fraud, the defendants never previously had informed the Trustees that they could limit their personal liability by obtaining fiduciary liability insurance coverage or recommended that the plaintiffs change the Plan to a self-directed structure pursuant to § 404(c) of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1104(c) ("ERISA").

---

[1] These facts are taken from the allegations of the plaintiffs' complaint and from both parties' memoranda in support of an in opposition to the pending motion to remand. To resolve disputed issues of fact relating to subject matter jurisdiction, the court may consider evidence beyond the pleadings, including affidavits and other evidence submitted by the parties. Flores v. Southern Peru Copper Corp., 414 F.3d 233, 235 n. 30 (2d Cir.2003).

## II.    Discussion

A defendant may remove an action originally filed in state court only if the case originally could have been filed in federal court, see 28 U.S.C. § 1441(a), and the defendant bears the burden of showing the propriety of that removal, see Grimo v. Blue Cross/Blue Shield of Vt., 34 F.3d 148, 151 (2d Cir. 1994).  To determine whether federal question jurisdiction can be a basis for removal, courts are guided by the well-pleaded complaint rule, which provides that "federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law . . . and only when plaintiff's well-pleaded complaint raises issues of federal law."  Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998) (internal citations omitted).  Thus, a complaint that includes only state law claims generally cannot be removed to federal court on the basis of federal question jurisdiction.

The complete preemption doctrine, however, is a corollary to the well-pleaded complaint rule.  Moscovitch v. Danbury Hosp., 25 F. Supp. 2d 74, 79 (D. Conn. 1998).  Under the complete preemption doctrine, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).  "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."  Marcus, 138 F.3d at 53 (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987)).  Removal is proper in such cases.  Id.  More specifically, "ERISA preemption provides a valid basis for removal jurisdiction only if (1) the state law cause of action is preempted by ERISA, and (2) that cause of action is 'within the scope' of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a)."

Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co., Inc., 126 F.3d 61, 65 (2d Cir. 1997). "In other words, if a plaintiff's state law claim is within the scope of § 502(a)[,] it is completely preempted regardless of how he has characterized it." Moscovitch, 25 F. Supp. 2d at 79.

The Court must apply a two-prong analysis to determine whether a state law is preempted by ERISA. Plumbing Indus. Bd., 126 F.3d at 65. First, ERISA preempts a cause of action when a state law refers to ERISA plans "in the sense that the measure acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." Id. at 67 (internal quotations omitted). Second, ERISA also preempts a cause of action when a state law "has a clear connection with a plan in the sense that it mandates employee benefit structures or their administration or provides alternative enforcement mechanisms." Id. (internal quotations omitted). If neither of these prongs is satisfied, however, there is a considerable presumption against preemption. Id.

Here, the plaintiffs bring a claim for professional negligence and a claim for breach of contract under state law. Neither cause of action relies upon ERISA's existence and therefore the plaintiffs' claims do not "refer" to ERISA plans. See Collins v. SNET, 617 F. Supp. 2d 67, 82 (D. Conn. 2009) (holding that a breach of contract claim does not refer to or rely on ERISA and is thus not preempted).

As to the second prong of the ERISA preemption analysis—whether state law has a clear connection with a plan—the Second Circuit has held that ERISA does not preempt ordinary state-law claims against non-fiduciaries. See Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 323 (2d Cir. 2003) (stating that "run-of-the-mill," "garden-variety," and "unexceptional" state-law

claims against non-fiduciaries, including professional negligence claims, are not preempted by ERISA). Here, both professional negligence and breach of contract are typical state-law causes of action that do not, on their face, have a clear connection to ERISA. The defendants, however, claim that they are fiduciaries under the Plan and, therefore, that the plaintiffs' claims are preempted.

The executed engagement agreement between the parties explicitly states that the defendants "will not be providing legal, accounting, tax or investment advice and that the [defendants] do[] not act in a fiduciary capacity and [are] not [] fiduciar[ies] of the Plan." While contractual provisions are probative of the parties' intent, such provisions are not dispositive. See Mortg. Lenders Network USA, Inc. v. CoreSource, Inc., 335 F. Supp. 2d 313, 318 (D. Conn. 2004). Instead, courts employ a functional analysis in determining whether a fiduciary relationship exists. See Haddock v. Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 122–23 (D. Conn. 2009); see also 29 U.S.C. § 1002(21)(A).

ERISA defines a fiduciary, in relevant part, as a person who "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan . . . ." 29 U.S.C. § 1002(21)(A)(ii). Thus, the focus is on whether the defendants rendered "investment advice." The Department of Labor's regulations for ERISA defines "investment advice" as:

> (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of the Employee Retirement Income Security Act of 1974 (the Act) and this paragraph, only if:
>
> (I) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and

(ii) Such person either directly or indirectly (e.g., through or together with any affiliate)—

    (A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or

    (B) Renders any advice described in paragraph (c)(1)(I) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3-21(c)(1). The defendants contend that because the plaintiffs allege in their complaint that the defendants "fail[ed] to advise [the plaintiffs] as to the risk inherent in keeping all Plan assets invested in a single account with Madoff," Compl. ¶ 16, that the defendants rendered investment advice and, consequently, are fiduciaries under the Plan. Read in the context of the entire Complaint, however, this allegation does not relate to investment advice. Rather, the allegation goes to the heart of the plaintiffs' claim that the defendants never advised them about the risk concerning the *structure* of the Plan. Specifically, the defendants failed to advise the plaintiffs of the risk of maintaining a central-pooled investment account, as opposed to a participant-directed plan.

According to the parties' contract, the defendants were hired as consultants "to provide consulting and compliance related services relative to the on-going annual administration [of the Plan]." Generally, consultants performing their usual professional functions are not considered to be fiduciaries. See Gerosa, 329 F.3d at 320–21 n.3 (citing 29 C.F.R. § 2509.75-5). The

legislative history of ERISA, however, notes that a formal distinction in title, such as "consultant" rather than "investment adviser" is not controlling.  See Mortg. Lenders Network, 335 F. Supp. 2d at 318–19.

> While the ordinary functions of consultants and advisers to employee benefit plans (other than investment advisers) may not be considered as fiduciary functions, it must be recognized that there will be situations where such consultants and advisers may because of their special expertise, in effect, be exercising discretionary authority or control with respect to the management or administration of such plan or some authority or control regarding its assets.  In such cases, they are to be regarded as having assumed fiduciary obligations within the meaning of the applicable definition.

Id. (quoting H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 5038, 5103).  Here, the defendants did not have any "discretionary authority" or "control" over the management or administration of the Plan nor did they have authority over the Plan's assets.  The plaintiffs had their money invested with Madoff for more than ten years before they hired the defendants and the defendants did not make any investment recommendations to the plaintiffs nor did the defendants have access to the Plan's assets.  While the defendants were hired to make recommendations to the plaintiffs about the design and structure of the plan, there is no indication that they had discretion to actually make investment decisions on behalf of the plaintiffs and they were not given special authority over plan management.  See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 445 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where . . . the Plan's settlor[] makes a decision regarding the form or structure of the Plan . . . .").  Such lack of special expertise and discretion weighs in favor of finding that the defendants were not fiduciaries.  See Gerosa, 329 F.3d at 3231 n.3.

The defendants' reliance on Dudley Supermarket, Inc. v. Transamerica Life Ins. & Annuity Co., 302 F.3d 1 (1st Cir. 2002) is inapposite. In Dudley, the defendants were the primary and routine provider of investment advice for the plaintiffs' ERISA plan and, therefore, were found to be fiduciaries under the plan. Id. at 3–5. Here, in contrast, the defendants were not the *primary* or *routine* provider of investment advice. Rather, the defendants were consultants hired to assist with the design, structure, and maintenance of the Plan. Such advice is not investment advice. Consequently, this Court finds that the defendants were not fiduciaries under the Plan and that the plaintiffs' claims are not preempted by ERISA. Accordingly, the plaintiffs' motion to remand is granted.

The plaintiffs also seek an award of their costs, including attorneys' fees, incurred as a result of the defendants' removal pursuant to 28 U.S.C. § 1447(c). Because the defendants had an "objectively reasonable basis for seeking removal," the plaintiffs' request for costs and fees is denied. See Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); MCredit, Inc. v. City of Waterbury, 651 F. Supp. 2d 1, 8 (D. Conn. 2009).

Because the case should be remanded to state court, this Court does not have subject matter jurisdiction over the defendants' motion to dismiss and therefore may not reach the merits of the motion. Accordingly, the defendants' motion to dismiss is denied without prejudice.

### III. Conclusion

Accordingly, the plaintiffs' motion to remand [Dkt # 18] is GRANTED and the defendants' motion to dismiss [Dkt # 20] is DENIED, without prejudice. The Clerk is directed to remand this case to the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport.

SO ORDERED this <u>14th</u> day of December 2010, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**